\* MOUNT ADAMS & EDEN PARK R. R. CO. v. DANIEL CAVAGNA.

**1. ERROR TO LET JURY DECIDE, WITHOUT EVIDENCE, WHETHER GUARDS ON CABLE CARS ARE SUFFICIENT.**

In an action brought against a street railroad company, by a minor, to recover damages for a personal injury received by him by being struck by one of the cable cars of the defendant company, on one of the streets of the city, in consequence of the negligence and default of the company, its officers and agents, and the unskilfully constructed, insufficient and defective guards upon said car—the plaintiff is only entitled to recover on such ground, when such negligence or default appears from the evidence. And where there is no evidence tending to show negligence as to such guards, or that they were in any respect different from those in general or ordinary use on like cars, it is error for the court, in the charge given to the jury, to leave it to them to find whether the car, considering the route upon which it was run, was in their judgment constructed as ordinary cars would require, in the matter of placing the guard upon the same, and to instruct them that if they found it was not, and that the injury to plaintiff was caused by that defect, that the defendant would be liable.

**2. ERROR TO CHARGE, WITHOUT QUALIFICATION, THAT PERSON HAS A RIGHT TO WALK ON PART OF STREET USED BY CARS.**

One of the issues in the case was, whether the defendant under all the circumstances of the case, was running its car on the street with ordinary care when the plaintiff was injured. The court charged the jury, without any qualification thereto, "that upon the public street, any person has the right to walk, either at the pavement or on the part used by vehicles, or upon the part of the street used by the street cars." This, under the circumstances of the case, was erroneous and prejudicial to the defendant. While such abstract right may exist, it is not to be exercised in opposition to the known rights of others. Persons who walk upon that part of the street used principally and rightfully by teams, vehicles and cars, are reasonably held to greater care that when on the sidewalk, and those running the car might reasonably look for such greater care under those circumstances.

**3. FAILURE TO STOP ON SEEING A BOY RUNNING TOWARD THE TRACK NOT NEGLIGENCE PER SE.**

The failure to stop a cable car on seeing a boy run towards the track, is not negligence *per se*, as a reasonably prudent gripman need not necessarily anticipate that the car would not be seen.

Error to the Court of Common Pleas of Hamilton county.

SMITH, J.

Daniel Cavagna, a minor, by his next friend brought an action in the court of common pleas against the plaintiff in error, to recover damages for a personal injury received by him, by being struck by one of the cable cars of the company on Fifth street in this city. He avers that while he was crossing said street and the track of the defendant's road, and in a position completely in view of the gripman and the conductor of the car, by reason of the negligence and default of the defendant, its officers and agents, and the unskilfully constructed, insufficient and defective guards upon said cars, and the negligence, carelessness and default of the defendant's agents and employes upon said train, their inattention to their duties, and their incompetency and want of skill in the discharge thereof, the cars were allowed to run against and over the plaintiff, without notice or warning, or proper effort to stop the cars, whereby he was severely injured.

The answer denied all of these averments. On the trial of the case, the plaintiff (who was six years old when he was injured), recovered a verdict for $3,500. A motion for a new trial was made by the defendant, but it was overruled, and a bill of exceptions allowed, containing all of the evidence with the rulings of the court thereon, the charge of the

---

\*This decision as to duty of gripman to stop the car, is followed by the same court in C. H. & D. R. R. Co. v. Murphy, 9 Circ. Dec., 703.

court to the jury, with the exceptions taken thereto, and certain special charges asked by the defendant, but which the court refused to give.

Quite a number of reasons have been urged in argument, why the judgment should be reversed. We notice as briefly as may be those which seem to us to be important.

One of the objections made was to the charge of the court in reference to the liability of the defendant company for failure to place a suitable guard upon the wheels of the car which caused the injury by passing over the foot of the plaintiff. The only evidence offered upon this subject was that in front of the wheels of the car, was a guard which came within five or six inches of the ground. There was nothing disclosed to show whether this was or was not a suitable guard for cars of that kind, or that they are not such as are everywhere in use on street railroads—nor was there any evidence (except the proof as to the kind of guard on this car itself), to show that there was any negligence or default on the part of the company in using such an one, or that it was too high or too low, or in any respect different from those in ordinary and general use.

On this state of the case the court in its charge to the jury, on page 231, left it to them to say, whether this car, considering the route upon which it was run, was in their judgment constructed as ordinary care, would require in the matter of placing the guard rail upon the same. If not, and the injury was caused by that defect, then the defendant would be liable. And after the giving of the general charge, the attention of the court was specially called to this subject by the inquiry of two of the jurors, who evidently considered it one of importance, as the evidence in the case might lead to the conclusion that had there been different guards in front of the wheels the boy might not have been so badly injured. One of the jurors inquired of the court whether there had "ever been any ruling with regard to the distance those guards should be placed from the ground or from the pavement." Another said, "It is intended as a guard, I suppose."

In answer to this the court said, (page 241) "Well, in that respect the jury will have just to remember the proof as to how the guards were placed; and with regard to the distance of the guards, the space between the bottom of the guard and street or the rail. It will be a question of fact for the jury to consider as to whether there was negligence in so constructing the car or not; whether they exercised ordinary care in constructing it in that particular manner. This is all left for the fair consideration of the jury."

As we understand this charge of the court, the jury were in effect directed that although there was no evidence as to the proper way to construct cars in this respect, or of the manner in which they were ordinarily constructed or made by this company or by others, or that the safety of the public required guards of a different character from those on this car, that the jury might decide from their own ideas or instincts the manner in which guards should be applied. This we think was erroneous. The jury were not warranted in finding that the defendant was negligent as to this, unless the evidence showed that it was. We may assume that it is the duty of a corporation of this kind, engaged in the business of running cars at a rapid rate, through the streets of a city, often crowded with persons engaged in their legitimate business, to use proper means to protect the lives and limbs of such persons, and in doing so must employ such care, and use such machinery and appliances as are employed by other persons of ordinary care in the same business. Every person must so conduct his own affairs as not to injure the rights of another. But, as we have said, to make a company of this kind liable for negligence in failing to have guards of a particular kind, the evidence should show it, and that in using the kind then upon the car it failed to exercise ordinary care; that is, such as a prudent man in the same business ordinarily exercised; and it will not do to leave the determination of such question to the jury, as was done in this case, to decide it on their own notions, and without any evidence showing such failure of duty on the part of the defendant.

In the general charge to the jury, the court used this language without any qualification:

"And in this connection, I may say that upon public streets any person has the right to walk, either at the pavement or on the part usually used by vehicles, or upon the part of the street occupied by the street cars."

We are of the opinion that this broad statement was calculated to mislead the jury. There is no doubt but that foot passengers have a right to walk upon the roadway of the street, or even upon the tracks of a railroad laid therein, under certain circumstances. They are compelled to cross such streets and tracks, and may walk along the same, instead of the pavement ordinarily used for this purpose, if necessary, or proper under the circumstances to do so. But this is not to be done as against the ordinary rights of others, and when used in this way, much greater care and caution are required of the foot-passenger than if he were in the ordinary foot-way, for the reason that such part of the street is also rightly and principally used by teams, vehicles and cars. In this case, where one of the issues was whether the defendant, under all the circumstances, was running its cars with ordinary care, the jury might well have understood, that in the opinion of the court the plaintiff was rightfully in the street and on the track, and that the fault was wholly with the defendant.

We think that special charge No. 1 was right, and should have been given. The court was asked to charge, that if the jury found, that the injury of the plaintiff was the result of pure accident, and that he was hurt through no negligent act or omission upon defendant's part, the verdict should be for the defendant.

It is true the jury was told generally that the defendant company would only be liable if the injury was caused by its negligence, but there was no suggestion as to its being accidental—and the charge asked was so direct and clear, that there was no reason for its refusal. We are of the opinion also that charges Nos. 4, 5 and 6 were substantially correct and should have been given. They requested the court to charge that the street was not a play-ground for children, and that the gripman was not bound to anticipate that children on the sidewalk would suddenly run upon the track; or even if he saw a boy running towards the track, that it was not absolutely his duty to stop the car at once. That he might exercise his judgment to determine whether the boy would see the car and stop —and that if after he saw him, and in the exercise of his judgment, he acted as a reasonably prudent gripman ought, and made every effort in his power to avoid the injury, the company would not be liable.

As the judgment will have to be reversed for these errors, we deem it not necessary or proper to pass upon the question whether the court erred in overruling the motion for a new trial, based on the ground that the verdict was against the weight of the evidence. There were other statements of the court and rulings, as to the uses of glasses by the gripman and the evidence of Carney as to his opinion whether the cars could have been stopped by the gripman, after Carney first saw the car and before it struck the plaintiff, which may be objectionable, but we do not deem it necessary to be more specific as to these points.

Robert Ramsey, for plaintiff in error.

Chas. T. Greve, for defendant in error.